**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CAROLYN ANN KOLBE, ) | |
| ) | CASE NO. 3:14-cv-226 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DAVID A. KATZ |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Carolyn Ann Kolbe ("Kolbe") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).[1]

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and the case REMANDED.

---

[1] Plaintiff's brief employs inappropriately small type, reduced margins, and at times single-spaced text. When converted to appropriate font and margins, Plaintiff's brief is well in excess of thirty pages, and, therefore, exceeds the standard twenty-five (25) page limitation for social security briefs set forth in the Local Rule 16.3.1(g). Plaintiff's counsel previously had a brief stricken for failing to comply with the Local Rules. *See Leach v. Comm'r of Soc. Sec.*, 3:13-CV-02037, Document No. 20. All future briefs filed by counsel *must* utilize standard 12 point Times New Roman font (or another font that has no more than eighty (80) characters to a line of text), double-spaced, with one-inch page margins. In addition, **counsel is hereby ORDERED to verify that any other briefs already filed in cases pending before this Court comply with the above parameters**.

## I. Procedural History

On December 28, 2010, Kolbe filed an application for POD and DIB alleging a disability onset date of December 22, 2010. (Tr. 10.) Her application was denied both initially and upon reconsideration.

On August 30, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Kolbe, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 10.) On September 13, 2012, the ALJ found Kolbe was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 21-22.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age forty-four (44) at the time of her administrative hearing, Kolbe is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c). (Tr. 20.) Kolbe has a high school education, and past relevant work as a hair cutting stylist and hair replacement operations manager. (Tr. 20.)

### *Relevant Hearing Testimony*

At the hearing the ALJ posed the following hypothetical to the VE:

Okay, please presume a hypothetical individual vocationally situated as the claimant, with the same history and education, and the hypothetical individual can perform all the functions of light work except she is never able to climb ladders, ropes, or scaffolds, is frequently able to reach above the shoulders, must avoid all hazards, and can perform work that can be done in a seated or standing position. Would such a person be able to perform the claimant's past relevant work as either actually or as performed in the general national economy?

(Tr. 69.)

The VE testified that such an individual could not perform Kolbe's past relevant work as a hair stylist, but could perform the job of an operations manager. *Id*. The VE further testified that such an individual would be able to perform some unskilled jobs such as a machine tender, ticket seller, or laundry folder. (Tr. 69-70.) The ALJ then posed a second hypothetical: "Okay, assume the same abilities in hypothetical one; however, the individual is limited to sedentary work." (Tr. 71.) The VE testified that such a limitation would rule out Kolbe's past

relevant work as an operations manager as well. *Id.* Nonetheless, the VE identified a number of positions that such an individual could perform, including, for example, unskilled assembler (DOT § 715.687-114) and surveillance system monitor (DOT § 379.367-010).[2] (Tr. 71.) The VE testified that an additional limitation to only occasional reaching overhead would not affect the previously identified sedentary jobs. (Tr. 72.)

In response to a question posed by Kolbe's attorney, the VE testified that if the hypothetical person had problems concentrating, finishing tasks, and required unscheduled breaks, there would be no jobs available. (Tr. 74.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

---

[2] The VE also identified a third unskilled, sedentary job which was labeled inaudible in the transcript. (Tr. 71.)

[3] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Kolbe was insured on her alleged disability onset date, December 22, 2010 and remained insured through the date of the ALJ's decision, September 13, 2012 . (Tr. 12, 22.) Therefore, in order to be entitled to POD and DIB, Kolbe must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

## IV. Summary of Commissioner's Decision

The ALJ found Kolbe established medically determinable, severe impairments, due to cervical and lumbar degenerative disc disease, fibromyalgia, and migraines. (Tr. 12.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 15.) Kolbe was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. (Tr. 16, 20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Kolbe was not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also*

*Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Treating Physician Rule*

In her third assignment of error, Kolbe contends that the ALJ violated the treating physician rule by failing to provide reasonably adequate explanations for rejecting the opinions of two treating physicians – Matt Roth, M.D., and Mahmoud S. Mohamed, M.D. (ECF No.15 at

5

20.) The Commissioner asserts that the ALJ reasonably assigned more weight to the opinions of state agency physicians because Dr. Roth and Dr. Mohamed gave "varying opinions." (ECF No. 17 at 6-11.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[4]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at *5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore

---

[4] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

6

'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Kolbe asserts that the ALJ failed to give appropriate weight to the opinions of Dr. Mohamed and Dr. Roth. (ECF No. 15 at 20-24.) Specifically, Kolbe references Dr. Mohamed's opinions from January 2011 and August 2012. (ECF No. 15 at 20-21.)

In a basic medical form completed in January 2011, Dr. Mohamed stated that Kolbe's medical conditions included low back pain, fibromyalgia, and migraines. (Tr. 388.) Dr.

7

Mohamed opined that Kolbe could stand/walk for one to two hours in an eight hour workday in thirty minute increments, sit for approximately four hours in one to two hour increments, and lift/carry up to five pounds frequently and six to ten pounds occasionally. (Tr. 389.) He indicated that Kolbe was markedly limited in her ability to push/pull and moderately limited in her ability to bend, reach and handle. *Id*. He believed Kolbe was employable within the above limitations and stated that the limitations described were permanent. *Id*.

In a Residual Physical Capacities Questionnaire completed in August 2012, Dr. Mohamed remarked that Kolbe had "severe fibromyalgia" resulting in "a lot of aches, pain and fatigue," as well as chronic migraines and insomnia. (Tr. 604-606.) Dr. Mohamed opined that Kolbe could sit for six hours, stand for one hour, and walk for one hour in an eight-hour workday. (Tr. 604.) He indicated that Kolbe could lift/carry up to ten pounds occasionally but never more. *Id*. Based upon the definitions provided in the form, Dr. Mohamed felt that Kolbe could not perform sedentary or light work on a sustained basis. *Id*. He further indicated that Kolbe could never bend, twist from side to side, or climb, stairs, ladders, or scaffolding. (Tr. 605.) She could, however, occasionally reach above shoulder level, squat, and kneel. *Id*. Finally, Dr. Mohamed suggested that Kolbe should avoid unprotected heights; working around moving machinery; exposure to marked changes in humidity/temperature; work requiring substantial outside activity in the cold; and, exposure to dust, fumes or gases. *Id*.

In what appears to be a private insurance form bearing the "SallieMae" logo, on July 26, 2012, Dr. Roth checked a box indicating that he believed Kolbe was unable to engage in substantial gainful activity for a continuous period of not less than sixty months. (Tr. 593.) Dr. Roth indicated that Kolbe's disabling conditions included cervical and lumbar spondylosis, facet arthrosis of the neck and lower back, and myofascitis/sacroiliitis. *Id*. Dr. Roth explained that Kolbe's symptoms included chronic, daily pain, which required chronic pain medication that impaired her physical and mental activities. *Id*. Though he did not quantify the limitation, Dr. Roth indicated that Kolbe was "[l]imited in any type of sustainable activity including standing or sitting." *Id*. In treatment notes from the same date, Dr. Roth listed Kolbe's "active problems" as anemia, depression with anxiety, fibromyalgia, lower back pain, migraine headaches, moderate

8

recurrent major depression, and neck pain. (Tr. 594.) Dr. Roth concluded that he did not "expect [Kolbe] to be able to function appropriately without chronic narcotic medication. Anticipate this would limit her ability to perform gainful employment for full work week without causing significant discomfort and set back in chronic health conditions."[5] (Tr. 596.)

With respect to Dr. Mohamed's opinions, the ALJ ascribed them "little weight" as he found them "not consistent with the record as a whole and it is in a check the box form that does not state how it is supported with relevant evidence." (Tr. 19.) As for Dr. Roth's opinion, it too was given "little weight" as the ALJ deemed it "inconsistent with the medical record as a whole." *Id*. The ALJ ultimately found that Kolbe could perform sedentary work with the additional limitation that Kolbe could only reach overhead occasionally.[6]

The Commissioner does not appear to dispute that Dr. Mohamed and Dr. Roth qualified as treating physicians. The Commissioner's brief references the ALJ's finding, but goes on to cite medical evidence of record not expressly referenced in the decision. (ECF No. 17 at 8-10.) To the extent the Commissioner is attempting to advance reasons for according these opinions little weight that were not given by the ALJ, such arguments are of no value. As this Court has frequently noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's 'post hoc rationale' that is under the Court's consideration." *Robinson v. Colvin*, 2014 U.S. Dist. LEXIS 139665 at **11-12 (N.D. Ohio 2014), *Blackburn v. Colvin*, 2013 U.S. Dist. LEXIS 107313, 2013 WL 3967282 at *

---

[5] Despite its excessive length, Kolbe's brief does not specify which opinion of Dr. Roth's was improperly rejected. The Court, therefore, assumes that Kolbe takes issue with the opinion that the ALJ expressly referenced in the decision. (Tr. 19, *citing* Exh. 21F.)

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567; SSR 83-10, 1983 SSR LEXIS 30 ("'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday ...")

8 (N.D. Ohio July 31, 2013). *See also Dutkiewicz v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 164305, 2013 WL 6089680 at * 6 (N.D. Ohio Nov. 19, 2013); *Hutchinson v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 123404, 2013 WL 4604561 at *14 (E.D.Mich. Aug. 29, 2013); *Jury v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 114843, 2013 WL 4427353 at *11 (N.D. Ohio Aug. 14, 2013); *Sarchet*, 78 F.3d at 307 ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.")

Confining this Court's review to the reasons actually identified by the ALJ, the rejection of these opinions is so perfunctory as to render the decision unreviewable. Merely saying that the opinions were "inconsistent with the medical record as a whole," is conclusory and devoid of explanation, thus depriving this Court of the ability to conduct a meaningful review. If such a formulaic recitation, standing alone, was deemed sufficient for rejection, the treating physician rule would cease to have any practical force or effect. As succinctly stated by a recent Court of Appeals' decision from another Circuit, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, ***or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion***." *Garrison v. Colvin*, 759 F.3d 995, 1012-1013 (9th Cir. 2014) (emphasis added).

The Court also finds that the ALJ's statement that Dr. Mohamed's opinion was a "check the box" form does not constitute a good reason for rejection. First, careful review of both of Dr. Mohamed's opinions reveals that those forms do not merely contain boxes indicating whether the physician believes a claimant is disabled or not, but contain specific functional limitations that relate to the claimant's ability to sit, stand, walk (including the amount of time each can be performed), the ability to lift (including the specific weight that could be lifted), postural limitations, and environmental limitations. (Tr. 388-389, 604-606.) Thus, the form completed by Dr. Mohamed is unlike that discussed in *Rogers v. Comm'r of Soc. Sec.*, 225 F.3d 659, 2000 WL 799332 at *6 (6th Cir. 2000), where a treating physician merely concluded that the claimant

10

would never be able to resume working – a statement that was undermined by the claimant's concession that she was capable of sedentary work.

In this Court's experience, treating physicians rarely, if ever, discuss the work-related functional limitations of their patients in their treatment notes.  Rather, such opinions are typically documented in forms that specifically ask a physician to address a patient's functional limitations in a variety of areas that impact a claimant's vocational abilities.  Absent binding authority, this Court does not believe that the "good reasons" requirement is negated simply because an opinion as to a claimant's functional limitations is set out in a checkbox, checklist, or fill-in-the-blank form.  *See also Jones v. Comm'r of SSA*, 2014 U.S. Dist. LEXIS 133614 (N.D. Ohio Sept. 22, 2014) (finding that "the Commissioner has failed to demonstrate that a check box form is patently deficient such that an ALJ is not required to consider or discuss the opinion.")  To be sure, some courts have observed that opinions contained in such forms may be deemed weak evidence compared to opinions that are more thoroughly explained with clear references to the medical record.  *See, e.g., Harris v. Comm'r of SSA*, 2014 U.S. Dist. LEXIS 131293 (N.D. Ohio Sept. 17, 2014) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.") (citations omitted).  Nonetheless, none of the authority cited by the Commissioner clearly establishes that treating source opinions may be categorically disregarded because they are contained in such a form.  It also bears noting that "the check-box form is routinely used by state agency reviewers ..."  *See Stancato v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 135504 (N.D. Ohio Sept. 24, 2014).  Moreover, if a treating source's opinion, contained in such a form is truly deficient, an ALJ should have little difficulty giving a reasoned explanation as to why it should be assigned little or no weight.

While the ALJ found, again in a conclusory fashion, that Dr. Mohamed did not indicate how his opinion was supported by relevant evidence, it bears noting that the last page of the form from the August 2012 opinion contains handwritten remarks by Dr. Mohamed.  (Tr. 19, 606.)  In those remarks, Dr. Mohamed explained that Kolbe's impairments caused chronic and daily pain and fatigue, and that the medications prescribed made her activities of daily living more difficult.  (Tr. 606.)  Thus, it is simply inaccurate to state that the form contained "no explanation" for its

findings. If the explanation given by Dr. Mohamed was inadequate, then it was incumbent upon the ALJ to explain why that was the case.

Finally, to the extent the Commissioner contends that the treating physicians' opinions were properly rejected because they conflicted with the opinions of the State Agency physicians, this Court has also previously ruled that an ALJ cannot base his or her rejection of a treating physician's opinion upon such an inconsistency. *See, e.g., Rudish v. Colvin*, 2014 U.S. Dist. LEXIS 168224 (N.D. Ohio Nov. 4, 2014); *Brewer v. Astrue*, 2011 U.S. Dist. LEXIS 64262, 2011 WL 2461341 at *7 (N.D. Ohio Jun. 17, 2011) ("To do so would turn the treating physician rule on its head [as] [i]t is well established that the opinions of non-examining physicians carry little weight when they are contrary to the opinion of a treating physician."), *citing Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (finding that the opinion of a non-examining physician "cannot provide a sufficient basis for rejecting the opinions of plaintiff's treating physicians"); *Fife v. Heckler*, 767 F.2d 1427, 1431 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant.") As explained by the Sixth Circuit Court of Appeals:

> Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).

Accordingly, inconsistencies between the opinions of treating sources with the opinions of non-treating State Agency physicians do not constitute "good reasons" for rejecting the former. Therefore, this Court cannot accept the ALJ's general and unexplained assertion that Dr. Mohamed's or Dr. Roth's opinions were "inconsistent with the record as a whole." The Court finds that the ALJ erred by failing to give good reasons for rejecting the limitations assessed by Kolbe's treating physicians. As such, in the interests of judicial economy, the Court declines to

address Kolbe's remaining assignments of error.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision should be VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

                                          s/ Greg White
                                          United States Magistrate Judge

Date: January 7, 2015

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**