IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CAROLYN ANN KOLBE,

       Plaintiff,     Case No. 3:14 CV 226

  -vs-

                  MEMORANDUM OPINION

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

KATZ, J.

  Carolyn Ann Kolbe applied for social security disability insurance benefits with the Social Security Administration. After exhausting her available administrative remedies, the Commissioner of Social Security subsequently denied Ms. Kolbe's application for benefits.

  Ms. Kolbe then sought judicial review of the Commissioner's decision. The case was referred to Magistrate Judge Greg White for findings of facts, conclusions of law, and recommendations. The Magistrate Judge issued a report recommending that the Court vacate the Commissioner's decision denying Ms. Kolbe's application for benefits and remand the case to the Commissioner for further proceedings. This matter is before the Court pursuant to the Commissioner's timely objections to the Magistrate Judge's report. Ms. Kolbe has filed a response to the Commissioner's objections.

  The Court has jurisdiction over the Commissioner's final decision denying Ms. Kolbe's request for benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832 (6th Cir. 2006). In accordance with *United States v. Curtis*, 237 F.3d 598, 602–03 (6th Cir. 2001), this Court has made a de novo determination of the Magistrate Judge's report. For the reasons stated below, the Court adopts the report in part, and affirms the Commissioner's denial of benefits.

## I. Standard of Review

The Court conducts a de novo review of those portions of the Magistrate Judge's report to which the Commissioner objects. 28 U.S.C. § 636(b)(1). In so doing, the Court reviews the Commissioner's decision to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g). This Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Court does not re-weigh the evidence, but must affirm the Commissioner's findings as long as there is substantial evidence to support those findings. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citations and internal quotation marks omitted). The Commissioner's decision is not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Id.* at 854–55.

## II. Discussion

The parties have not objected to the Magistrate Judge's factual summary of the case as set forth on pages two through four of the report. Therefore, the Court adopts the Magistrate Judge's summary of the facts. The Magistrate Judge's summary of the case is as follows:

### I. Procedural History
On December 28, 2010, Kolbe filed an application for POD [period of disability] and DIB [disability insurance benefits] alleging a disability onset date of December 22, 2010. (Tr. 10.) Her application was denied both initially and upon reconsideration.

On August 30, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Kolbe, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 10.) On September 13, 2012, the ALJ found Kolbe was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 21-22.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-four (44) at the time of her administrative hearing, Kolbe is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c). (Tr. 20.) Kolbe has a high school education, and past relevant work as a hair cutting stylist and hair replacement operations manager. (Tr. 20.)

*Relevant Hearing Testimony*

At the hearing the ALJ posed the following hypothetical to the VE:

> Okay, please presume a hypothetical individual vocationally situated as the claimant, with the same history and education, and the hypothetical individual can perform all the functions of light work except she is never able to climb ladders, ropes, or scaffolds, is frequently able to reach above the shoulders, must avoid all hazards, and can perform work that can be done in a seated or standing position. Would such a person be able to perform the claimant's past relevant work as either actually or as performed in the general national economy?

(Tr. 69.)

The VE testified that such an individual could not perform Kolbe's past relevant work as a hair stylist, but could perform the job of an operations manager. *Id*. The VE further testified that such an individual would be able to perform some unskilled jobs such as a machine tender, ticket seller, or laundry folder. (Tr. 69-70.) The ALJ then posed a second hypothetical: "Okay, assume the same abilities in hypothetical one; however, the individual is limited to sedentary work." (Tr. 71.) The VE testified that such a limitation would rule out Kolbe's past relevant work as an operations manager as well. *Id*. Nonetheless, the VE identified a number of positions that such an individual could perform, including, for example, unskilled assembler (DOT § 715.687-114) and surveillance system monitor (DOT § 379.367-010).[1] (Tr. 71.) The VE testified that an additional limitation to only occasional reaching overhead would not affect the previously identified sedentary jobs. (Tr. 72.)

---

[1] The VE also identified a third unskilled, sedentary job which was labeled inaudible in the transcript. (Tr. 71.)

3

In response to a question posed by Kolbe's attorney, the VE testified that if the hypothetical person had problems concentrating, finishing tasks, and required unscheduled breaks, there would be no jobs available. (Tr. 74.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Kolbe was insured on her alleged disability onset date, December 22, 2010 and remained insured through the date of the ALJ's decision, September 13, 2012. (Tr. 12, 22.) Therefore, in order to be entitled to POD and DIB, Kolbe must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Kolbe established medically determinable, severe impairments, due to cervical and lumbar degenerative disc disease, fibromyalgia, and migraines. (Tr. 12.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 15.) Kolbe was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

> range of sedentary work. (Tr. 16, 20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Kolbe was not disabled.

(Doc. No. 19, pp. 2–4).

The Commissioner contends that the Magistrate Judge erred in analyzing the ALJ's application of the treating physician rule, which ultimately led to the ALJ's decision not to give controlling weight to the opinions of two of Ms. Kolbe's treating physicians. In her response, Ms. Kolbe supports the Magistrate Judge's analysis and also contends that the Commissioner's objections are not timely.

The Court's docket establishes that the Commissioner filed an unopposed motion for an extension of time until February 4, 2015, to file her objections to the Magistrate Judge's report. Ms. Kolbe was subsequently granted an extension of time by the Court to file a response. This Court has the discretion to enlarge the time to file objections to a magistrate judge's report. *See* Fed. R. Civ. P. 6(b); *Riley v. Richards*, No. 99-1327, 2000 WL 332013, at *1 (6th Cir. 2000); *Patterson v. Mintzes*, 717 F.2d 284, 286–87 (6th Cir. 1983). Because the Commissioner's motion was unopposed, the Court did not rule upon the request. However, in light of Ms. Kolbe's current concerns, the Commissioner's motion for an extension of time to file her objections is granted. Ms. Kolbe's objection regarding the timeliness of the Commissioner's objections is overruled as moot.

The issue of this case concerns the ALJ's treatment regarding the medical opinions of two treating physicians, Dr. Mahmoud Mohamed and Dr. Matt Roth. Regarding Dr. Mohamed, the ALJ stated:

> In a mental functional capacity assessment, Mahmoud Mohamed, M.D., opined that the claimant was employable and had no significant mental limitations.

>  (Exhibit 8F at 13).  The undersigned has given Dr. Mohamed's opinion great weight as it is consistent with the record as whole and it provide insight into the severity of the claimant's impairments and it indicates that the claimant's depression does not cause work related restrictions.

(Doc. No. 13, Tr. 17)

However, the ALJ also found:

>  Turning to the opinion evidence, in January 2011, Mahmoud Mohamed, M.D., opined that the claimant could stand or walk for one to two hours in an eight-hour day, could stand or walk for 30 minutes without interruption, could sit for less than four hours in an eight-hour day, could sit for one to two hours at a time, could frequently lift or carry up to 10 pounds at a time, and was moderately limited in her ability to bend, reach, and handle objects.  (Exhibit 8F at 12).  In August 2012, Dr. Mohamed opined that the claimant could sit for six hours continuously in an eight-hour day, stand or walk for one hour continuously in an eight-hour day, alternatively sit or stand for two hours, and occasionally lift or carry 10 pounds, but did not have the capacity to sustain sedentary work on a sustained basis.  (Exhibit 22F at 1).  The undersigned has given Dr. Mohamed's opinion little weight as the opinion is not consistent with record as a whole and it is in a check the box form that does not state how it is supported with relevant evidence.

(Doc. No. 13, Tr. 23).

In analyzing the record, the Magistrate Judge stated:

>  Confining this Court's review to the reasons actually identified by the ALJ, the rejection of these opinions is so perfunctory as to render the decision unreviewable.  Merely saying that the opinions were "inconsistent with the medical record as a whole," is conclusory and devoid of explanation, thus depriving this Court of the ability to conduct a meaningful review.  If such a formulaic recitation, standing alone, was deemed sufficient for rejection, the treating physician rule would cease to have any practical force or effect. . . .
>  The Court also finds that the ALJ's statement that Dr. Mohamed's opinion was a "check the box" form does not constitute a good reason for rejection.  First, careful review of both of Dr. Mohamed's opinions reveals that those forms do not merely contain boxes indicating whether the physician believes a claimant is disabled or not, but contain specific functional limitations that relate to the claimant's ability to sit, stand, walk (including the amount of time each can be performed), the ability to lift (including the specific weight that could be lifted), postural limitations, and environmental limitations.  (Tr. 388-389, 604-606.)  Thus, the form completed by Dr. Mohamed is unlike that discussed in *Rogers v. Comm'r*

> *of Soc. Sec.*, 225 F.3d 659, 2000 WL 799332 at *6 (6th Cir. 2000), where a treating physician merely concluded that the claimant would never be able to resume working – a statement that was undermined by the claimant's concession that she was capable of sedentary work.

(Doc. No. 19, pp. 10–11).

The Sixth Circuit has addressed the question of when an ALJ is faced with reports from treating physicians which consist of forms containing check marks. The court explained:

> Next, Rogers argues that the ALJ improperly assessed her complaints of disabling pain. She essentially contends that the ALJ had no reason not to credit the reports of two of Rogers's treating physicians, Drs. Carter and Karr. In fact, the ALJ had ample reason not to credit their reports. Both reports consist simply of forms in which spaces are filled out and boxes are checked off. Neither explains how the authors arrived at their diagnoses. *Cf. Cutlip v. Sec'y of Health & Human Svcs.*, [sic] 25 F.3d 284, 286–87 (6th Cir.1994) (noting that in social security disability cases, opinions of treating physicians are ordinarily entitled to great weight, but only if "they are supported by sufficient clinical findings and are consistent with the evidence."). Moreover, Dr. Karr's conclusion (to the extent that a checked-off box on a form is a conclusion) that from January 14, 1981 forward, Rogers would never be able to resume "any work," is materially undermined by Rogers's own concession that she was capable of sedentary work. We conclude that the ALJ cannot be faulted for declining to accord these reports the weight that reports of treating physicians are ordinarily due.

*Rogers v. Comm'r of Soc. Sec.*, No. 99-5650, 2000 WL 799332, at *6 (6th Cir. June 9, 2000).

Dr. Mohamed's report of January 31, 2011, does consist of boxes which are checked designating the physical restrictions he feels Ms. Kolbe possess. In addition to the physical restrictions, Dr. Mohamed states that Ms. Kolbe suffers from low back pain, fibromyalgia, and migraines. He noted that her condition was guarded, she was on medications, and she had monthly appointments with a chiropractor. What is significant is that Dr. Mohamed noted in the appropriate check box that Ms. Kolbe was employable with the physical restrictions he placed upon her. (Doc. No. 13, Tr. 392–93).

In a residual physical capacities questionnaire dated August 10, 2012, Dr. Mohamed checked various boxes and circled various time restrictions which he felt applicable to Ms. Kolbe. In addition to the restrictions, the form provided a section which allowed Dr. Mohamed to make additional remarks. In this section, Dr. Mohamed stated: "The patient has severe fibromyalgia where she has a lot of actue pain and fatigue. She also has chronic migraines and insomnia. She is [illegible] medications. She has difficulties with activities of daily living including house work and ADL'S [sic]." (Doc. No. 13, Tr. 608–10).

Under *Rogers*, the portions of Dr. Mohamed's two documents, which consist of the checked boxes, are not entitled to the weight afforded treating physicians. *Rogers*, 2000 WL 799332, at *6. Thus, the ALJ did not commit a legal error in deciding to give Dr. Mohamed's opinion "little weight." (Doc. No. 13, Tr. 23).

The Court recognizes that Dr. Mohamed's report of August 10, 2012, made comments concerning Ms. Kolbe's pain, fatigue, migraines, insomnia, and daily activities which extended beyond the checked boxes on the form. (Doc. No. 13, Tr. 610). The ALJ not only gave Dr. Mohamed's opinion little weight due to the checked-off box form used, but also due to the fact that the doctor's opinion was "not consistent with the record as a whole." (Doc. No. 13, Tr. 23).

This conclusion is supported by the evidence. Despite Dr. Mohamed's observations regarding Ms. Kolbe's daily activities, these comments are not consistent with her admitted abilities. The ALJ summarized the evidence in this regard as follows:

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant stated that she is able to prepare meals, pay her bills with a checking account, go grocery shopping, clean her house, use the internet, and watch television for two to four hours. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been

8

> essentially routine and conservative in nature. The claimant alleged cervical and lumbar pain that prevent her from working; however, her allegations are not supported the objective evidence of the record including the imaging studies showing only mild degenerative changes. (Exhibit 6F at 26). Additionally, the claimant took care of her mother for a significant time period when she was sick. (Exhibit 17F at 1). This evidences that the claimant was capable of performing work. Furthermore, the claimant has not required any surgical intervention or assistive devices. Although the claimant has been diagnosed with fibromyalgia, the record does not contain significant objective evidence as required by SSR's 99-2p and 12-2p, demonstrating that her condition is as disabling as the claimant alleges regarding her vague complaints of stiffness, pain, and fatigue. There is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairment. The claimant testified that she was evicted from the space she rented for her hair salon. Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.
>
> In sum, the above residual functional capacity assessment is supported by medical records from treating sources, examination and evaluation reports by consulting doctors, and opinions from non-examining state agency medical consultants.

(Doc. No. 13, Tr. 24).

As Dr. Mohamed's opinion regarding Ms. Kolbe's daily activities is not supported by the objective evidence in the record, the ALJ's finding that Dr. Mohamed's opinion is "not consistent with the record as a whole" is supported by substantial evidence. 42 U.S.C. § 405(g); *Walters*, 127 F.3d at 528; *Brainard*, 889 F.2d at 681.

Regarding Dr. Roth, the Magistrate Judge stated:

> In what appears to be a private insurance form bearing the "SallieMae" logo, on July 26, 2012, Dr. Roth checked a box indicating that he believed Kolbe was unable to engage in substantial gainful activity for a continuous period of not less than sixty months. (Tr. 593.) Dr. Roth indicated that Kolbe's disabling conditions included cervical and lumbar spondylosis, facet arthrosis of the neck and lower back, and myofascitis/sacroiliitis. *Id*. Dr. Roth explained that Kolbe's symptoms included chronic, daily pain, which required chronic pain medication that impaired her physical and mental activities. *Id*. Though he did not quantify the limitation, Dr. Roth indicated that Kolbe was "[l]imited in any type of

9

> sustainable activity including standing or sitting." *Id*. In treatment notes from the same date, Dr. Roth listed Kolbe's "active problems" as anemia, depression with anxiety, fibromyalgia, lower back pain, migraine headaches, moderate recurrent major depression, and neck pain. (Tr. 594.) Dr. Roth concluded that he did not "expect [Kolbe] to be able to function appropriately without chronic narcotic medication. Anticipate this would limit her ability to perform gainful employment for full work week without causing significant discomfort and set back in chronic health conditions."[3] (Tr. 596.)

(Doc. No. 19, pp. 8–9).

Concerning Dr. Roth, the ALJ stated: "Treatment records in July 2012 from Matt Roth, M.D., note that the claimant was still complaining of pain, stiffness, and a decreased range of motion, but she stated that Imitrex was helping her and she had better control of her severe headaches. (Exhibit 21F at 4)." (Doc. No. 13, Tr. 23). In evaluating the report, the ALJ found:

> Dr. Roth opined that he did not expect the claimant to be able to function appropriately without chronic narcotic medications and he anticipated that this would limit the claimant's ability to perform gainful employment for a full work-week without causing significant discomfort and set back in her chronic health conditions. (Exhibit 21F at 6). The undersigned has given Dr. Roth's opinion little weight as it is inconsistent with the medical record as a whole.

(Doc. No. 13, Tr. 23).

As previously discussed, the Magistrate Judge took exception to the ALJ's evaluation of Dr. Roth's opinion as being "inconsistent with the medical record as a whole." (Doc. No. 19, p. 10).

In reviewing the Commissioner's decision, the Court is mindful of the repeated instructions from the Sixth Circuit. It is the Court's duty to review the Commissioner's decision to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g). Absent a determination that the Commissioner has failed to apply the correct the legal standards or has

---

[3] Despite its excessive length, Kolbe's brief does not specify which opinion of Dr. Roth's was improperly rejected. The Court, therefore, assumes that Kolbe takes issue with the opinion that the ALJ expressly referenced in the decision. (Tr. 19, *citing* Exh. 21F.)

made findings of fact unsupported by substantial evidence, the decision must be affirmed. *Walters*, 127 F.3d at 528.

Substantial evidence exists in this case regarding the ALJ's evaluation of Dr. Roth's opinion, requiring the Court to affirm the Commissioner's decision. Dr. Roth stated that Ms. Kolbe had cervical and lumbar spondylosis, facet arthrosis in the neck and lower back, and myofascitis/sacroiliitis. She had chronic and daily pain requiring chronic pain medication which impaired her physical and mental activities. Dr. Roth found Ms. Kolbe limited in any type of sustainable activity, including standing or sitting. She had difficulties with daily activities without pain. Further, she was able to perform daily functioning, albeit with pain and requiring medications. The pain medication affected her interaction with others. (Doc. No. 13, Tr. 597).

However, as the Court previous discussed regarding Dr. Mohamed's opinion, Ms. Kolbe's daily activities do not correspond to Dr. Roth's evaluation. Dr. Roth's statements regarding Ms. Kolbe's pain is not supported by the objective medical evidence which shows only mild degenerative changes in her back. The treatment for her condition has been conservative. Further, Ms. Kolbe quit working, not because of her medical conditions, but because she was evicted from the space she had rented for her hair salon. (Doc. No. 13, Tr. 24). Although Dr. Roth felt that Ms. Kolbe's conditions impaired her ability to engage in substantial activity (Doc. No. 13, p. 597), this opinion contradicts Dr. Mohamed's statement that Ms. Kolbe was employable with the physical restrictions he placed upon her. (Doc. No. 13, Tr. 393).

Ms. Kolbe and the Magistrate Judge feel that the ALJ could have given a more thorough explanation regarding the weight he gave Dr. Mohamed's and Dr. Roth's opinions. In *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), the court noted that the Commissioner has elected to

11

impose certain standards on the treatment of "medical source evidence." *See also* 20 C.F.R. § 404.1502. Under the "treating physician rule," *Cole*, 661 F.3d at 937, the Commissioner requires that an ALJ give a treating physician's opinion controlling weight if it "'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ declines to give a treating physician's opinion controlling weight, the ALJ must then balance the following factors to determine what weight to give the opinion: 1) the length of the treatment relationship and the frequency of the examination; 2) the nature and extent of the treatment relationship; 3) the supportability of the opinion; 4) the consistency of the opinion with the record as a whole, and 5) the specialization of the treating source. *Cole*, 661 F.3d at 937 (citations omitted).

*Cole* noted that the Commissioner requires decision makers to "'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). The reasons must be supported by the evidence and must be sufficiently specific to inform any subsequent reviewer of the weight given to the treating source's medical opinion, along with the reasons for that weight. *Id.* (citation omitted).

Dr. Mohamed's opinion was given great weight regarding his observations regarding Ms. Kolbe's mental functional capacity assessment and her ability to be employable with no significant mental limitations. However, the doctor's residual functional limitations were given little weight because of the checked box format used. Under *Rogers*, this conclusion is completely permissible. *Rogers*, 2000 WL 799332, at \*6. Regarding Dr. Roth, his opinion was given little

12

weight as being inconsistent with the record and those inconsistencies have been discussed by the Court. Therefore, *Cole* supports the affirmance of the Commissioner's decision.

The ALJ's summary of the evidence and explanation of his decision does allow this Court to conduct a meaningful review of the record and the reasons for the ALJ's decision. Because it is the responsibility of this Court to review the record to determine whether the findings of the Commissioner are supported by substantial evidence, which they are, the Commissioner's decision must be affirmed. 42 U.S.C. § 405(g); *Walters*, 127 F.3d at 528; *Brainard*, 889 F.2d at 681.

### III. Conclusion

Accordingly, the Commissioner's motion for an extension of time to file her objections is granted. The Magistrate Judge's summary of the record is adopted, but the Court declines to adopt the Magistrate Judge's conclusions of law. The Commissioner's denial of Ms. Kolbe's application for social security disability insurance benefits is affirmed.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE